Let me call the case on the record. We're going to hear USA v. Rogers, case number 23-3152. Each side will have 15 minutes, and if the appellants would like to reserve time for rebuttal, please make sure to let me know, and remember that you are responsible for keeping track of your own time. I will keep track of my own time. If it's okay with you, Your Honor, I'd like to make that decision at the end of 13 minutes, whether I want to press for it or not. So I will keep track of that, okay, if it's fine with this Court. Members of the panel, the principal issue is... Well, to be fair, I don't mean to cut into your time, but to be fair, whether you reserve it or whether you don't, we're going to ask you questions which will kind of go over just like we did with last counsel. So it's not a big deal. So just go forward. I expect questions. I'm sorry to interrupt, but I have points that I want to make that I'm going to try to get out, and if I can't get them out in 13 minutes, I'm going for the 15. That's the point that I'm making. I appreciate that. Make sure you introduce yourself for the record as well. Thank you. Good morning, members of the panel. My name is Michael Humphreys. I represent the appellant, Caleb Rogers, in this case. The principal issue in this case, members of the panel, is whether the district court abused its discretion in denying the appellant's severance motion. Now, in evaluating that ruling... So when we're looking at the appellant's severance motion, we're not really challenging the joinder because it had already happened. Right. We're challenging the severance, that the district court would not sever it after having joined it. Right. All right. I just wanted to make sure because your brief is kind of unclear whether we're going for joinder or severance. But if we're in severance, then it is abuse of discretion. Yes. All right. So then at that point, don't you have to show that the joint trial is so manifestly prejudicial that the judge is required to exercise his discretion by severing? Isn't that the standard? That is absolutely the standard. All right. And the prejudice has to be, based on Lewis, of such magnitude that it would encompass a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. Right? So you've got to come up with a specific trial right that you've prejudiced about or that the jury was prejudiced from making a reliable judgment. And then on Thorn Morton, you've got to prove that the prejudice is so clear and so manifest and so undue that your client was denied a fair trial. That's the standard, right? My client, yes. My client was denied a fair trial. All right. I'm trying to figure out because what's the reason then you're challenging the decision not to sever? Because there was a violation of due process. What violation? Because the trial court should have granted the severance. I understand. That's your argument. But what? I now gave you reasons you could come up with to challenge this, and now I'm saying come up with one as to what happened here that was wrong. I will. And here they are. I'm glad you brought it up, Judge. We're going to skip ahead here. Our position is that the district court failed to consider the principles that were set forth in Giroiro and Johnson. And those cases, each in their own way, say that prejudice is established whenever there is a dark specter that is raised over the defendant that causes the jury to believe he has a criminal disposition. But it seems to me that your whole argument is simple. You say the evidence in the Rio robbery was stronger, and therefore it lapped over into the other robberies, and that was the prejudice. That was the bottom line of your argument, right? Yes, that's the bottom line. And I have the third of the three robberies. And now, is that clear? Sorry. Excuse me. I'm sorry. That means the third of the three robberies, when he was... That was the third and the last of the three robberies. The third and the third. That's the best you can come up with on prejudice, that that evidence is so strong that it laps over. That's what you're really arguing, right? That is a spillover effect. That's exactly what I'm arguing. And I have the... Well, it's not enough under Zafriero, United States Supreme Court case, that the defendant has a better chance at acquittal because they don't sever. That's not enough. In other words, just because your client has a better chance at acquittal if they got to sever, that's not enough reason to sever. Well, the reason that we're setting forth is that the jury was infected by... But it's lapped over, but it isn't enough that your defendant has a better chance at acquittal just because of a severance. And that seems to me to what you're arguing, that there was a better chance of acquittal for the first two crimes because they weren't severed. Okay. It's not a better chance of acquittal. It's a better chance of a fair trial with regard to counts one and two. In other words, the jury had made up its mind when it heard the damning and damaging evidence with regard to the real robbery. And if I could just set forth what they were faced with considering once they heard all the evidence. They heard, number one, that the appellant had feloniously robbed a casino. Number two, that he had, as he was absconding, running away from the casino, he turned and faced his pursuers and said, I'm going to kill you. You don't want to die for this. This is not your money. Number three, he followed up that thread by pulling a gun or attempting to pull a gun out of his waistband to do Lord knows what, but he was sworn by the security officers. And that's the only reason that somebody wasn't harmed. Tell me, why is it that the evidence from this last robbery wouldn't have come in any way to prove the same modus operandi? I don't think that it would have come in, Your Honor, because never... It helped to prove the identity. It wouldn't... I mean, I looked at it, they're all done the same, and he had better evidence that he did that. Wouldn't it have helped to prove the identity? And therefore, it would have come in anyway? If this court orders that the cases be covered, is our position that those damaging and damning statements would not have come in because, number one, they wouldn't have been relevant. The Rio and the Red Rock and the Alianti robberies predated the Rio robbery. So they're not relevant. And even if it had come in, it might be subject to a 404B exclusion because it is extremely prejudicial. Our position is... Let's move to another. I got your idea. I don't want to take my colleagues' time, but there's a second thing. District Court worried about just exactly what you're saying, gave instructions, said, you must decide each count separately. The verdict on one count cannot control the verdict on another count. You've got to do each one separately. They went overboard to try to make sure that what you're saying happened did not happen. I disagree. I disagree with that. Well, that was the District Court's jury instructions. I read them. If you go back and look at the jury instructions, he said basically one sentence. It was a pro forma, generic separation of counts sentence. And I'm saying because this testimony... Well, I read, I can give you the site, but I read, you must decide each count separately. Verdict in one count cannot control the verdict on another count. Mr. Humphrey, volume five of the excerpt of the records, I think. Yes. 842 to 843, 842 to 83, summarize exactly what Judge Smith has just represented. It's a matter of the record that the court instructed as follows. A separate crime is charged against Mr. Rogers in each count, period. You must decide each count separately, period. Your verdict on one count should not control your verdict on any other count. And that's in the record. And then he proceeded to instruct the jury on the elements of Hobbs Act robbery and the three counts charged against Rogers and similarly advised the jury, again, quoting, those are the three separate counts of robbery. Now, what else would you expect the district court to do? Well, I'm glad you brought that up. I was going to bring this up in my rebuttal, but let me bring it up now. I make a request to this court that I found a case just two days ago as I was getting on the plane that I would like to call to this court's attention. I understand that... Did you give counsel the... He hasn't seen it yet and I'm happy to give it to him because it goes to the heart of your question, Judge Bennett. Pull it out while I'm sitting down. Well, why don't you go on with your argument and let's talk about that at another time because I'm not even sure you can get that in now since you haven't said anything about it. Well, that's why I'm asking this court's indulgence because I understand under Rule 28J I'm supposed to write a letter and I didn't have time to write the letter. And I think that it's relevant to this court's decision because it carves out a specific exclusion... How old is the case that you're referencing? Beg your pardon? How old is the case that you're referencing? Is it a new case? Is there a reason why you couldn't have found it? No, no. I just found it. In my continuing efforts to lawyer this case, I continue to research even after the briefs have been filed. But I'm happy to... Counsel, continue with your argument. So... I actually... Let me interrupt you. I do have questions for you. You know, my colleague, Judge Smith, mentioned Zafiro. Do you know that case? Are you familiar with that? I've read Zafiro. Okay. Why is this any different? You said we're not looking for acquittals, but aren't you exactly looking for acquittals? I mean, at the end of the day, isn't that kind of what you're saying is, look, if they severed this, there's a good chance that my client would not have been found guilty as to two of the robberies because Rio was where all of the evidence was held. So what are you looking for? I'm looking for a fair trial, is what I'm saying. Not an acquittal. He's got to stand on his own on those two cases. If this court severs, he's not exonerated. He still has to stand accused of those cases. But what I'm saying is that the prejudice was so incredibly extreme based upon everything that he did. And we acknowledge that it's his fault that we're even before this court. But given that, it's fair for us to ask that there not be spillover. He should be held to account for what happened in the Rio robbery. All those statements, all those admissions, all those threats, all those violent acts should come in with respect to the Rio robbery only. So we're looking for, you've asked the question, a fair trial to say, sever these trials. The statements regard these damaging statements, whether they come in or not. Counsel, I'd like you to take it one step further. Let's assume we did sever the trials. What are you telling this court would likely have happened with the first two robberies that aren't the Rio robberies? It's a jump ball, Judge, because these damaging statements don't come in. Secondly, the Alleante robbery has very, very little evidence. So are you telling me you think he would be acquitted? I'm telling you that would be a question for the jury. I'm not trying to be flip. Absolutely. But what I'm telling you is it seems like it's a distinction without a difference for Zafiro. That's why I'm trying to ask you, how is your case different? What Zafiro says, and I'll quote it to you, it is well settled that a defendant is not entitled to severance merely because he may have a better chance of acquittal in separate trials. Your client may have had a better chance of acquittal in separate trials. At least that's what it seems like you may be arguing without saying acquittal. You keep saying he wants a fair trial. I get that. But what I'm trying to tell you is I need you to explain to me why that's different than Zafiro. Because Zafiro also says, or Johnson says, that when you have evidence that creates, quote unquote, a criminal disposition, that's what I'm asking this court to focus on. So Zafiro and Johnson say specifically that. My question would be, why would they go that far and say, listen, in this circumstance, you know, we understand it's a high standard. We get it. It's a high standard. And one of the ways in which you could prove your case that there has been manifest prejudice is if the defendant has been, through the evidence, shown to have a criminal disposition. In other words, not what he did, but who he is. And that is a part of the opinion as well. That's a part of the Johnson opinion as well. So you're saying if they grate against each other, I mean, I can't justify or rationalize that. But I'm asking this court not to ignore that because that is a part of the opinion where the court says, listen, if there's been a criminal disposition that has been established by the government and they have been very successful in establishing his criminal disposition. Then let me give this back to you. I mean, I think my colleagues have made it clear here that one of the things the court did do to avoid that is say each case has to stand on its own. Each count. Each count, sorry. Thank you. Each count has to stand on its own. Which leads me to the opinion, ma'am. We're not going to entertain that right now, that we have procedures here in the Ninth Circuit for you to provide those sorts of cases. If it was a brand new case, I would say go ahead, but it's not. Okay. So let me just talk a little bit about the substantially similar problem because that's what the district court based its decision to join on. And the substantially similar problem, I would submit to you, has not been met. First of all. But now just a minute. You just told me that you're not challenging the joinder. The only thing you're challenging is the failure to sever. So we can't go back and talk about joinder now if you're not going to challenge the joinder because the joinder is under eight, rule eight. Right. The severance is under rule 14. And your severance, you told me, you were very straight. We're under, we do not believe that they should have not severed. That's a rule 14 motion. It's an abuse of discretion standard to review. So don't go back and talk about joinder now in your argument. You haven't got that much time left. Well, I think you said that we should, my position is we should not have severed. They should not have severed. My position is they should have severed. I know you did say that. Okay. Under an abuse of discretion standard, generally, if it's the judge who has to make those decisions and it's all under the kind of considerations that are laid out in Johnson, Johnson, if I'm going to suggest that that DJ has abused his discretion or her discretion in the failure to sever, I need a case that says based on those same circumstances, they should have severed. I looked all over for that case. I couldn't find it. And that's why I have you got a case. I could only refer this court once again to Jawara and Johnson. Okay. If your best one is Johnson, then that's, that's all I want to know because the bottom line is under an abuse of discretion standard, you got a tough hill if you don't have a case. Right. All right. Well, I see that my time is over and I'm going to, if I can just follow one thing, I think my colleagues will just print for a few seconds. This case was not totally just about the events of the third and last robbery when he was apprehended. I mean, because you had the testimony of his brother and his close friend and you've, your, your brief also attacked the coercion, the suggestive coercion by the government in presenting those witnesses. And that had to do with photos of a truck used in the first robbery and other matters that clearly the evidence in the third and last robbery was significant, but that was not the only evidence presented by the government. There was certainly lots of other evidence. I'm going to submit on that because we, I didn't even bring up the suppression, even though I argued in the brief or the jury instructions. We're going to submit on that. We're planting our flag on the fact that this case should have been severed because of the evidence that came in in the real robbery. Thank you for your time. Thank you, Mr. Humphrey. Good morning, Your Honor. May it please the court. David Keebler on behalf of the United States. Severing these trials wouldn't have changed anything. As you brought up, Judge Smith, with 404B, evidence of each of these robberies would have come in in three separate trials. This is the same modus operandi in each of these three cases. It's a single robber covered up. And it would have been admitted to prove identity, correct? Correct, Your Honor, because that is the only element that was really challenged in this case. I was going to say identity was the element that counsel challenged, right? Correct, Your Honor. The only reason it would have come in is under identity. So it would have come in, if at all, to prove identity. Yes, Your Honor, because the robberies were captured on videotape, and the victims of the robberies testified. So there was no doubt that the robberies occurred. The only question the jury had to answer was, is this the same person? Is this the defendant Rogers? Even if we step aside from 404B, there was no prejudicial joinder in the first place, under Rule 14. Rule 8. 8. Rule 8A. Rule 8 is the joinder. Excuse me. No prejudicial severance. Failure to sever was not prejudicial. Yes. That's what you're arguing. Yes, Your Honor. And I think we called it prejudicial joinder in our brief, so I apologize for that. But it seems like the court's questions were for particularly Rule 14. So under Rule 14— Just so we're clear, Rule 8A provides, with respect to appropriate joinder of defendants, as to which, as Judge Smith noted, doesn't appear to have been an initial challenge, is a common scheme or plan. It doesn't mention identity. It says a common scheme or plan. That was the basis of the joinder of these—I'm sorry, in terms of the joinder of the counts had to do with offenses charged in a common scheme or plan, correct? Correct, Your Honor. And that wasn't, as we raised— And then Rule 14 then applies in terms of whether or not he was prejudiced by that joinder. Correct. Yes. Prejudiced by that joinder and therefore should have severed. There are a couple different things this Court's already mentioned. The jury instructions, that compartmentalization of evidence for the jury that the judge gave, that remedied any prejudice. Additionally in this case, what this Court is most concerned with when you're looking at failure to sever is if there's a spillover. You've referenced that. Well, that's his argument. That's his argument, a spillover. Yes, Your Honor. From the third crime. Right. Looking at everything through the lens of the third crime and then just having a spillover to what counsel called criminal disposition. It's not a criminal disposition case. This is a simple robbery case. These robberies were all presented very simply in siloed manner. Each witness, each victim from the casinos presented their evidence. These robberies occurred at three separate casinos on three separate days and had separate victims. So you have witnesses testifying about each of those and then the case detective testifying about what evidence overlapped and comparing it. Count four was a 924c charge related to the third and last robbery. Correct, Your Honor. So it was derivative of the third and last robbery. Because of the way that the government presented the case, that is an independent reason to not find prejudicial joinder. Additionally, the judge's jury instructions clearly said, separate these things. These are different counts. One, you can find them guilty on one, but that doesn't mean you have to find them guilty on all. This is not an all or nothing case. Juries are presumed to follow district court's jury instructions. In fact, those are pattern jury instructions from the Ninth Circuit. So any potential prejudice is further mitigated by that point. You have multiple different ways that there was no prejudice. The instructions, the evidence, as well as the fact that even if we separate all three of these trials, we still got 404B and everything's coming in that way, given the way. Can I interrupt you? Because we've kind of gone through this quite a bit and he's kind of submitted the rest. So maybe I shouldn't ask the question. My worry was, did the district court correctly decline to instruct the jury on attempted robbery? Yes, Your Honor. And that is the difference between robbery and an attempted robbery is taking versus intending to take. The evidence in this case was that the appellant, Rogers, jumped over a barrier, snatched money out of a cash register door in a casino sports book. Okay. I got your argument about the evidence, but I look for a case that suggests that this is a lesser included offense and I couldn't find it. So I said to myself, was the district court required then to give this instruction because there was no case suggesting it was a lesser included offense? No, Your Honor. The district court is not required to give an instruction on a lesser included offense where a rational jury cannot convict the defendant of the lesser included offense without finding an element that would convert the lesser to the greater. In this case, it's the taking versus intending to take. The taking occurred, he's running out of the casino. He leaves the casino, he's out in the parking lot. Correct. He's running to his car and he stopped. This is in video, this is in the record. So he has moved the object, taken it, has physical control of it, and is attempting to escape when he's stopped. I mean, the standard, I think, is that this court, I think, in the Arndt case, A-R-N-T, if I'm pronouncing it correctly, is held that if the evidence would permit a jury rationally to find the defendant guilty of the lesser offense and acquit him of the greater, and your argument is no rational jury could find that he attempted to but did not commit the Hobnock robbery when he seizes the money, runs out of the casino, and is found out in the parking lot, which is technically within the curtilage of the casino, the usual property law phrases, and that's really the thrust of what appears the actually in the casino, and they might perhaps have been able to convict him of a lesser offense, and the position of the government, obviously, is that no rational jury could find him guilty of this lesser offense and acquit him of the greater offense, and that your attempted robbery when you're out there in the parking lot with the money in your hands, as opposed to having actually committed the robbery. Correct, Your Honor. I mean, that's what it comes to in a nutshell, I think, is it not? Yes, Your Honor, and it would create sort of absurd results if we did this curtilage, because how far does the curtilage extend to? How, you know, what if he just went up to his hotel room? Well, I guess, just in fairness, just hypothetically show my view of how there's no way that there should have been a lesser included offense instruction, but I mean, perhaps if he goes to the counter, goes to seize the money, grabs the money, somebody pulls the money back from him, and he has a panic attack and runs out, so to speak, then perhaps on those facts it might be that a lesser included offense would be you attempted to perform the robbery and took a substantial step in that direction, but did not complete it. That might have borne fruit, so that's it. Now, Timmy, that's how you would, the two hypotheticals would explain the lack of any validity of that argument in this case, it seems. Yes, Your Honor, I think your, the case that you bring up would be a much closer call. Sure. But when I first looked at the case, I thought, well, how far did he go with it? And obviously he was apprehended with the money and they caught him, but they didn't catch him just standing there at the counter. He just took two steps. He literally ran out of the building, essentially, and was, but he was still technically on the curtilage in the parking lot when he was finally apprehended after a rather dangerous event occurred, you know. Correct, Your Honor, because Las Vegas casinos occupy large spaces, so you can still be on the property and be very far away from the place you stole the money from, and that's what happened here, because the evidence in the trial shows the robbery and then shows the flight from the robbery and shows the defendant, the appellant, running through the parking lot and eventually being apprehended. So this is not one of those factual close calls where a judge could look at the evidence and say, well, maybe they would convict him on the lesser included, but not the. Again, the standard being whether a jury could rationally find him guilty of the lesser offense and actually acquit him of the more serious offense. Correct, Your Honor, and perhaps a rational jury could in that emotional, have an emotional moment and give the money back or stroke out or something like that, but this is not that circumstance. I have nothing further. If the court has nothing further, I would just submit on our brief and state and ask the court to affirm the trial court and the jury's verdict in this case. Thank you, Your Honor. Thank you, counsel. All right, I'd like to thank both counsel. This matter is now submitted. Since you didn't ask, I wasn't sure if you were wanting it, but we'll give you two more minutes. I'm just going to submit, but what I would really like is for the court to reconsider the cases that I found. I'm happy to give him as much time as the court wants to give him. I think it's relevant to the issues raised by this case. Have you looked at the rules to see how you do that kind of stuff? 28J says I'm supposed to do a certified letter. I didn't have time to do it, and that's why I'm here. Well, and you told my good colleague that the case is not new. It's a case that's been in the record for many years, so I really think you're kind of stuck on this particular case. I mean, if counsel wants to give you a full opportunity, you can talk about it, and he'll be able to brief it thereafter, but I don't think it's really worth your while. All right. Thank you very much for your time. Thank you. Okay. I'd like to thank both counsel in this matter. We appreciate your arguments, and that concludes our arguments for this morning. Thanks again to everyone, including our court staff, for all their wonderful help. The court will now stand in recess.
judges: SMITH, ALBA, Bennett